IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CAROLLYN S., | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-20-2552 |
| KILOLO KIJAKAZI,<br>Acting Commissioner,<br>Social Security Administration | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

On September 2, 2020, Carollyn S. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits under Title II of the Social Security Act ("the Act"). ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 13, 14), the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2021). For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 14) is GRANTED, and the SSA's decision is AFFIRMED.

**PROCEDURAL HISTORY**

On October 8, 2015, Plaintiff filed a Title II application for Disability Insurance Benefits, alleging disability since December 1, 2014. ECF No. 13-1 at 3. Her claim was denied initially and upon reconsideration on December 14, 2015 and January 15, 2016, respectively. ECF No. 12-4 at 128. Subsequently, on February 2, 2016, Plaintiff filed a written request for a hearing, and on August 17, 2017, an Administrative Law Judge ("ALJ") presided over a hearing. *Id.* On March 21,

2018, the ALJ rendered a decision ruling that Plaintiff was not disabled under the Act. *Id.* at 141. The ALJ's decision was remanded by the Appeals Council as a result of an Appointments Clause challenge brought by Plaintiff regarding the previous ALJ, and ALJ M. Krasnow presided over a new hearing and issued a decision. ECF No. 12-3 at 15. Plaintiff requested a review of ALJ M. Krasnow's determination, which the Appeals Council denied on August 3, 2020. ECF No. 12-3 at 1. Thus, the decision became the final decision of the SSA. 20 C.F.R. § 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On September 2, 2020, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. ECF No. 1. Plaintiff and Defendant both filed motions for summary judgment on May 20, 2021 and July 21, 2021, respectively.[1] This matter is now fully briefed, and the Court has reviewed both parties' motions.

## **STANDARD OF REVIEW**

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C.A. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff is not disabled is supported by

---

[1] On September 2, 2020, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF Nos. 3, 4.

substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citations and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citations and internal quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citations and internal quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for SSI, a claimant must establish that she is under disability within the meaning of the Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are

of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. § 404.1520; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. *Id.*; 20 C.F.R. § 404.1520(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. *Id.*; 20 C.F.R. § 404.1520(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520(d). *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must then evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. *See generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *3. However, the ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not differentiate them." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (internal quotation marks omitted)).

5

Requiring objective medical evidence to support a plaintiff's subjective evidence of pain "improperly increases [Plaintiff's] burden of proof." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv), (e).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. Claimant has the burden of proof during steps one through four of the evaluation. *see* 20 C.F.R. § 404.1520; *Radford*, 734 F.3d at 291. However, the burden of proof shifts to the ALJ at step 5 to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC, and (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *see Hancock*, 667 F.3d at 472–73. If the claimant can perform other work that exists in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v).

## ALJ DETERMINATION

On remand from the Appeals Council, the ALJ performed the sequential evaluation and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2014 through her date of last insured of December 31, 2015. ECF No. 12-3 at 17. At step two, the ALJ found that Plaintiff had severe impairments of spine disorder, obesity, and gastrointestinal disorder, as well as non-severe impairments of migraine, aneurism, hypothyroidism, restless leg syndrome, and affective mood disorder. *Id.* at 17–18. At step three,

the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 19. At step four, the ALJ determined that Plaintiff had the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) with the following limitations: the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ropes, ladders, and scaffolds. She should avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights.

*Id.* at 21. The ALJ then determined that Plaintiff was capable of performing past relevant work as a Secretary and Administrative Assistant. *Id.* at 25. Finally, at step five, the ALJ found that, "there were other jobs that existed in significant numbers in the national economy that [Plaintiff] also could have performed," after considering Plaintiff's age, education, work experience, and RFC. *Id.* at 26. Thus, the ALJ concluded that Plaintiff "was not under a disability, as defined in [the Act]" from December 1, 2014 through December 31, 2015, her date last insured. *Id.* at 27.

## DISCUSSION

Plaintiff raises three argument on appeal: (1) the ALJ failed to defer to Plaintiff's treating and examining physicians; (2) the ALJ failed to give Plaintiff credit for her earnings in the third and fourth quarters of 2015, extending her date last insured to June 30, 2016; and (3) the ALJ improperly relied on objective medical evidence to discount Plaintiff's subjective complaints about her conditions that do not produce objective medical evidence. Plaintiff's arguments lack merit and are addressed below.

A. The ALJ properly evaluated the medical opinion evidence on record.

The Court first considers Plaintiff's argument that the ALJ violated the "treating physician rule" by giving little weight to the findings of Dr. John L. Silvernail and Nathan Hill, M.P.T. ECF No. 13-1 at 5. *See Arakas*, 983 F.3d at 106. Plaintiff contends that the ALJ was required to defer

7

to the findings of Dr. Silvernail. Plaintiff's brief, however, focuses on the ALJ's rejection of the Hill's evaluation. ECF No. 13-1 at 5. For the sake of diligence, the Court addresses the ALJ's decision to give little weight to the findings by both Dr. Silvernail and Hill. ECF No. 12-3 at 24–25. Plaintiff asserts that the ALJ erroneously relied on consulting physicians to overcome Dr. Silvernail's functional capacity evaluation and that the ALJ improperly used medical opinions from non-examining psychologists who applied the "previous B criteria" to support that she had no mental impairment. ECF No. 13-1 at 5–6.

The treating physician rule generally requires an ALJ give a treating physician's opinion "more weight" because the treating physician is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [Plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c)(2). The ALJ must give the treating physician's opinion "controlling weight" if it is well-supported by medical techniques and is "not inconsistent with the other substantial evidence in [Plaintiff's] case record." *Id. See Arakas*, 983 F.3d at 106. To determine whether someone is a treating physician, the ALJ considers whether Plaintiff has ongoing relationship with "an acceptable medical source" and has seen that source consistently. *Id.* However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight. *Lewis*, 858 F.3d at 867 (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)); *see* 20 C.F.R. § 404.1527(a)(2). Moreover, an ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(1).

As an initial matter, the Court is not convinced that Dr. Silvernail and Hill were treating physicians whose opinions were entitled to deference under treating physician rule. The treating

8

physician deference rule is meant to give "more weight" to the treating physician's opinion due to their ability to provide a "detailed, longitudinal picture of [Plaintiff's] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). Dr. Silvernail saw Plaintiff on two consecutive days months after Plaintiff's date last insured, ECF No. 12-3 at 24, with one possible additional time that detailed only Plaintiff's complaints, ECF No. 12-8 at 679. This is not the type of "ongoing treatment relationship" that gave Dr. Silvernail a "detailed, longitudinal picture" of Plaintiff's impairments. 20 C.F.R. § 404.1527(a)(2), (c)(2). His opinion is therefore not of the type that the treating physician deference rule is meant to elevate. Furthermore, Hill as a physical therapist is not a "medical source" within the meaning of the treating physician rule and thus is not entitled to deference. *See* 20 C.F.R. §§ 404.1502(a) (defining "acceptable medical source" to include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, speech language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licenses physician assistants); *see also* 20 C.F.R. § 404.1527(a). Hill, like Dr. Silvernail, did not possess a "detailed, longitudinal picture" of Plaintiff's impairments as he only evaluated her once, months after her date last insured. ECF No. 12-8 at 684; ECF No. 12-3 at 25.

Even if the Court were to treat Dr. Silvernail's opinion as a treating physician under this rule, there is still substantial evidence to support the ALJ's lack of deference. Dr. Silvernail's evaluation described that Plaintiff had limited range of motion in her back and right shoulder. ECF No. 12-8 at 681. Regarding Plaintiff's gait, Dr. Silvernail wrote that she "rises slowly but unassisted from chair, climbs on exam table with minimal assistance, dismounts exam table cautiously but unassisted, ambulates slowly with antalgic gait, prefers to walk with cane" *Id.* The ALJ explained that Dr. Silvernail's opinion was inconsistent with the other evidence in the record. ECF No. 12-3 at 24–25. Importantly, the ALJ stated:

9

> Dr. Silvernail's [sic] opinion is inconsistent with the evidence of record. In addition to the objective evidence discussed . . . claimant testified that she can cook and can do the laundry, although she may have to take breaks. The claimant also stated that she has no limitations dressing herself, bathing, caring for her hair, and feeding herself.

*Id.* at 25 (citations to the record omitted). The ALJ's rejection of Dr. Silvernail's findings was thus not based solely on the competing assessment of other providers, as Plaintiff argues, but rather in large part on Plaintiff's own testimony of her abilities. The ALJ was not required to defer to Dr. Silvernail's assessment if it was contrary to other clinical evidence or "inconsistent" with other substantial evidence in the record, like other medical opinion evidence in the record and Plaintiff's own testimony. *See Lewis*, 858 F.3d at 867. Plaintiff does not dispute her own testimony, thus the ALJ was not required to give deference to Dr. Silvernail's opinion under the treating physician rule.

Further, even if Hill were a medical source entitled to deference as a treating physician, which the Court does not conclude that he is, substantial evidence supports the ALJ's decision to afford his opinion little weight. Hill conducted a Physical Work Performance Evaluation on Plaintiff on March 24, 2016, and stated:

> [Plaintiff] [c]annot perform the full range of Sedentary work as defined by the US Dept. of Labor in the DOT. This is due to difficulties performing the dynamic strength demands of work. These difficulties were due to decreased lumbar ROM, decreased right shoulder ROM, decreased lower extremity strength and reliance on assistive device to ambulate and transfer from sit to stand.

ECF No. 12-8 at 684. Plaintiff saw Hill once for the purposes of the above evaluation. Hill's assessment—"that [Plaintiff] could not even perform sedentary work—is a determination of "ultimate issue of disability," and is not due deference by the ALJ. *Id.* at 684. *See* 20 C.F.R. §

404.1527(d)(1). In light of the full record and Plaintiff's minimal contacts with both Dr. Silvernail and Hill, the ALJ did not err in failing to give deference to their medical evaluations.[2]

Finally, Plaintiff also contends that the ALJ improperly used medical opinions from non-examining psychologists to support that she had no mental impairment, and findings were rendered under the "previous B criteria" that changed as of March 27, 2017. ECF No. 13-1 at 6. This Court's opinion in *Autumn T. v. Saul* is applicable here. In *Autumn T.*, the Plaintiff argued, as here that "the ALJ's paragraph B findings were not based on 'an informed medical opinion' because the State agency consultants reviewed her records before the SSA revised the paragraph B criteria in 2017." *Autumn T. v. Saul*, No. CV DLB-19-1572, 2020 WL 4194145, at *4 (D.Md. July 21, 2020) (citations to the record omitted). The Court rejected the argument, explaining the ALJ's required analysis:

> When evaluating the severity of a claimant's mental impairments, the ALJ must employ the "special technique" to rate her degree of limitation in the four broad functional areas known as the paragraph B criteria. 20 C.F.R. §§ 416.920a(c), 416.925. An ALJ's assessment of a claimant's mental impairments is a "highly individualized process," in which the ALJ will consider "all relevant evidence." 20 C.F.R. § 416.920a(c)(1). The ALJ assigns a rating to each functional area based on the extent to which the claimant's impairment "interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(b), (c)(2).

*Id.* at *3. An ALJ is thus "charged with considering all of the evidence in the record when making findings, . . . An ALJ is certainly permitted to utilize a medical expert during the special technique but the regulations do not require a medical opinion." *Id.* at *4 (citations omitted).

---

[2] Plaintiff also asserts that the ALJ identified contradictory evidence to Hill's opinion that was "almost certainly the findings of a Workers' Compensation insurance defense physician," whose opinions should then be rejected. This argument is not compelling because, as discussed, neither the record nor Plaintiff's brief supports that Hill was a treating physician whose opinion was entitled to deference.

Here, Plaintiff challenges the ALJ's evaluation at steps two and three, where the ALJ determined Plaintiff's mental impairments were not severe or of a severity to meet or medically equal criteria of an impairment. ECF No. 12-3 at 16–17. *See* 20 C.F.R § 404.1520(c), (d). However, the ALJ's determination that Plaintiff's affective mood disorder was non-severe was based not on the medical opinions of non-examining psychologists as Plaintiff states, but on the ALJ's assessment of the record:

> The claimant's affective mood disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is thus non-severe. In making this finding I have considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR. Part 404, Subpart P. Appendix 1). These four areas of mental functioning are known as the "paragraph B" criteria.

ECF No. 12-3 at 18. Like in *Autumn T.*, the ALJ employed the special technique and proceeded through each functional area. The ALJ identified Plaintiff's own stated ability, including her ability to participate in her hobbies, pay bills, follow instructions, pay attention, engage in social activities, get along with authority figures, lightly clean, prepare her meals, drive her car, and go to stores. *Id.* at 18–19. The ALJ considered the opinion evidence of the State Medical and Psychological Consultants in its determination of Plaintiff's RFC, not his severity determination. *Id.* at 24. Plaintiff does not dispute the facts on which the ALJ relied to determine her affective mood disorder was non-severe, and the ALJ completed the "special technique" to evaluate the severity of Plaintiff's mental impairment. *See Autumn T.*, 2020 WL 4194145, at *3–4. The ALJ thus did not act erroneously in concluding Plaintiff's affective mood disorder was non-severe.

B. <u>The ALJ did not erroneously fail to apportion credit to Plaintiff for the third and fourth quarters of 2015.</u>

Plaintiff next contends that the ALJ failed to properly apportion her credit for the third and fourth quarters of 2015 when she was still working. Plaintiff contends that the error was significant

because apportioning the two additional quarters would make her date last insured June 30, 2016, as opposed to December 31, 2015. Quarters of coverage allow the SSA to determine if a plaintiff is "insured for purposes of establishing a period of disability or being entitled to disability insurance benefits." 20 C.F.R. §404.130(a). Title II of the Act credits claimants with quarters of coverage, a period of three calendar months, "for each part of the total wages paid . . . to [claimant] in a calendar year." 20 C.F.R § 404.143(a). The Act also provides that when an employee receives wages from an employer on account of accident disability, like under a "workmen's compensation law," such payments are "exclude[ed]" from the definition of wages. 42 U.S.C. § 409(a)(2).

Here, Plaintiff testified at the hearing on May 7, 2020 that her "last day of work" was December 1, 2014 when she was "placed on leave for [her] injury on December 1, 2014." ECF No. 12-3 at 44. She then testified that she was granted worker's compensation "up until she was released" on or about December 25, 2015. *Id.* Further, the ALJ asked Plaintiff if she had done "any work at all that [she'd] gotten paid for" since December 2014, and Plaintiff answered "[n]o, sir." ECF No. 12-3 at 46–47. However, despite her clear statements at the hearing, Plaintiff's brief instead relies on her statements in a "Work History Report" submitted to the SSA, dated November 13, 2015, in which Plaintiff states that she was she was presently employed as a High-Risk Labor and Delivery Nurse. ECF No. 12-7 at 374. Plaintiff does not point to any other part of the record that identifies the source of these payments, instead stating merely that she "claimed she was working then," earning $1,138 in the third quarter and $1,364 in the fourth quarter of 2015. ECF No. 13-1 at 6. Thus, Plaintiff does not dispute that this compensation was worker's compensation that she discussed in her hearing testimony. Because worker's compensation payments are not wages under the Act, the ALJ did not erroneously apportion Plaintiff's quarters of credit in determining her date last insured.

## C. The ALJ properly considered the evidence of the record in evaluating Plaintiff's subjective complaints.

Plaintiff's final argument is that the ALJ should not have relied on objective medical evidence to discount her subjective complaints from conditions that do not produce objective medical evidence. Plaintiff asserts that the ALJ "made objective medical evidence before 2015 the . . . gold standard for evaluating her claim" by finding that Plaintiff's statements about the "intensity, persistence, and limiting effects of her symptoms" were inconsistent with objective evidence that they were not disabling. ECF No. 13-1 at 7. Plaintiff claims the ALJ thus required objective medical evidence to support the findings of impairments that do not produce such evidence and used such evidence to discredit her impairments as non-severe. *Id.*

The United States Court of Appeals for the Fourth Circuit laid out the two-step process for an ALJ to evaluate a person's subjective symptoms under 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the [Act], an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (citations omitted); *see also Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must then assess Plaintiff's "symptoms to determine how the symptoms' intensity and persistence affect the plaintiff's ability to work." *Lavinia R. v. Saul*, No. CV SAG-20-1083, 2021 WL 2661509, at *4 (D.Md. June 29, 2021); 20 C.F.R. § 404.1529(c). The ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by Plaintiff. 20 C.F.R. § 404.1529(c). Thus, the ALJ must not disregard Plaintiff's complaints of "intensity, persistence, and limiting effects of

14

symptoms *solely* because objective evidence does not substantiate" them, *Arakas*, 983 F.3d at 95 (emphasis added) (citation omitted), but Plaintiff's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can . . . reasonably be expected to cause the pain the claimant alleges she suffers." *Lavinia R.*, 2021 WL 2661509, at *4 (quoting *Craig*, 76 F.3d at 595). The ALJ's reliance on objective medical evidence to reject subjective complaints is more limited when Plaintiff alleges impairments that do not produce objective medical evidence. *Arakas*, 983 F.3d at 97. To show proper compliance with the two-step process, the ALJ "must *both* identify evidence that supports [her] conclusion *and* 'build an accurate and logical bridge from [that] evidence to [her] conclusion.'" *Woods*, 888 F.3d at 694 (emphasis in original) (citations omitted).

In *Lavinia R.*, this Court affirmed an ALJ's decision that a plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *Lavinia R.*, 2021 WL 2661509, at *4 (citing the record). The ALJ considered radiographic and electrodiagnostic evidence, Plaintiff's treatment history, and provider recommendations and non-recommendations for treatment. *Id.* Ultimately, the Court concluded that "Plaintiff's argument that the same treatment history should or could have substantiated her reported symptoms amounts to a request that this Court reweigh the evidence. Where reasonable minds could differ with respect to the record evidence and the ALJ complied with all legal standards, remand is inappropriate." *Id.* (citing *Craig*, 76 F.3d at 589).

In contrast, the ALJ in *Arakas* "effectively requir[ed]" the plaintiff provide objective medical evidence to support her subjective complaints. *Arakas*, 983 F.3d at 96. While the ALJ did consider other evidence in the record, "his opinion indicate[d] that the lack of objective medical evidence was his chief, if not definitive, reason for discounting" the plaintiff's complaints. *Id.* at 97. The *Arakas* decision concerned a plaintiff with fibromyalgia, a disease "that does not produce objective medical evidence," and thus "normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects . . . based on the current medical understanding of the disease." *Id.* The Fourth Circuit concluded: the ALJ "may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or *some other disease that does not produce such evidence.*" *Id.* (emphasis added). However, for other diseases, unlike fibromyalgia in nature, the ALJ still may not disregard a plaintiff's subjective complaints "*solely*" because they are not substantiated by objective medical evidence. *Id.* at 95 (emphasis added).

Here, the Court first considers whether Plaintiff's has provided sufficient evidence to support that her identified medical conditions—migraines and hypothyroidism[3]—are of the type,

---

[3] Plaintiff's brief alleged two other conditions as conditions that do not produce objective medical evidence: affective mood disorder and restless leg syndrome. The Court will not analyze these issues here. First, Plaintiff has simply failed to show that she provided subjective complaints of her affective mood disorder to the ALJ that were rejected: the record shows that Plaintiff denied experiencing mental health concerns and depression at multiple different evaluations, ECF No. 12-4 at 105; her attorney at the hearing represented her "severe impairments" as the lower back issues, noting that "there[] [was] a history of . . . some anxiety issues as well, but . . . the main issues [were]" the Plaintiff's lower back issues, ECF No. 12-3 at 46; the Plaintiff did not identify testimony from her May 7, 2020 hearing of her subjective complaints of the affective mood disorder; and finally the ALJ relied on Plaintiff's own testimony to conclude the affective mood disorder was non-severe, not solely objective medical evidence. *Id.* at 18–19. Second, Plaintiff's brief does not include restless leg syndrome as a condition of which Plaintiff alleges disability, ECF No. 13-1 at 3, and the condition did not exist at Plaintiff's date last insured. ECF No. 12-3 at 18. The Court will thus not consider her argument with regard to restless leg syndrome because it did not exist at Plaintiff's date last insured. *See* 20 C.F.R. § 404.131(b); POMS DI 25501.320.

16

like fibromyalgia in *Arakas*, to not produce objective medical evidence. ECF No. 13-1 at 7. As an initial matter, Plaintiff has provided no argument, medical source, or citation to the record to support that the conditions she noted do not produce objective medical evidence. *Id.* In fact, the record shows the effects of her conditions and ongoing treatments: both disorders were diagnosed, treated, and managed with medication. ECF No. 12-8 at 709–10, 520. Given that Plaintiff has not provided support that her conditions were of the type that did not produce objective medical evidence, the Court next considers whether the ALJ discredited Plaintiff's subjective complaints solely by relying on objective medical evidence. The Court finds this is not the case.

The ALJ's lengthy analysis and discussion of Plaintiff's medical history, hearing testimony, and medical opinions of various treatment providers, has provided substantial evidence to support his conclusion that Plaintiff is not disabled under the Act. The ALJ made determinations about severity based the whole record, including Plaintiff's description of her impairments and her medical history. Unlike in *Arakas*, the lack of objective medical evidence was not the ALJ's "chief, if no definitive, reason" for discounting Plaintiff's subjective complaints; he instead relied significantly on Plaintiff's testimony about her abilities, including her ability to cook, do laundry, dress and clean herself, prepare meals, do light cleaning on a daily basis, shop, pay bills, manage a savings account, and engage in social activities and hobbies. ECF No. 12-3 at 23–24. *See Arakas*, 983 F.3d at 97. Moreover, like the ALJ in *Lavinia R.*, the ALJ here considered her medical record and treatments when discussing Plaintiff's subjective complaints, including evidence found in her chest and lung exam, cardiovascular and neurological exams, her muscle tone, strength, and gait, the strength of her extremities, as well as an MRI of her spine and a CT scan of her abdomen. *Id.* at 22–23. He noted that, though Plaintiff was using a cane to ambulate, no provider in the medical record deemed that to be medically necessary. *Id.* at 25.

17

Where the ALJ did consider Plaintiff's full treatment history, as is clear here, it is not proper on appeal for the Court to reweigh such evidence. *See Lavinia R.*, 2021 WL 2661509, at *4. Plaintiff does not purport that the ALJ erred in his discussion of her treatment history and symptoms, but only that he should have focused solely on her subjective complaints, even where it was in contrast to other evidence in the record. This is merely a request to reweigh evidence of a common treatment history and not the role for this Court on appeal. *See id.* The ALJ identified the medical record and Plaintiff's own testimony about her abilities to support his conclusion that Plaintiff's impairments were not severe. Objective medical evidence was far from being the sole factor that the ALJ weighed in making his decision. In doing so, the ALJ built "an accurate and logical bridge" from Plaintiff's evidence—both objective and subjective—to his conclusion. *Woods*, 888 F.3d at 694.

## CONCLUSION

In summation, the Court finds that the ALJ properly evaluated the evidence on record and provided substantial evidence to support the finding that Plaintiff was "not disabled" within the meaning of the Act from December 1, 2014, the alleged onset date. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 14) is GRANTED, and the decision of the SSA is AFFIRMED. The clerk is DIRECTED to close this case.

Date: 14 September 2021

A. David Copperthite
United States Magistrate Judge